**RAINES FELDMAN LITTRELL LLP**

1350 Avenue of the Americas, Fl. 22
New York, NY 10019
Tel: (917) 790-7100
Hamid R. Rafatjoo, Esq.
Carollynn H.G. Callari, Esq.
David S. Forsh, Esq.
Scott M. Hare, Esq. (admitted *pro hac vice*)

*Proposed Counsel to the Debtors and Debtors
in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| S.M.F. GROUP INC., *et al.*,[1] | Case No. 26-11893 (SAB) |
| Debtors. | (Jointly Administered) |
| BRASSERIE 57 LLC, BROADWAY HOSPITALITY VENTURE, LLC, BROOKLYN DINER USA, L.P., CAFE CONCEPTS (WASHINGTON DC), LLC, CIELI PARTNERS, L.P., EBBETS FIELD VENTURE, LLC, FIORELLO'S ROMAN CAFE, INC., ITALIAN CAFE CONCEPTS, LLC, RED EYE GRILL, L.P., and THE FINER DINER, LLC, | Adv. Proc. No. 26-_____ |
| Plaintiffs, | **COMPLAINT TO COMPEL TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 542, FOR DECLARATORY JUDGMENT, AND FOR PERMANENT INJUNCTIVE RELIEF** |
| v. | |
| AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., TOAST, INC., STRIPE, INC., and STRIPE PAYMENTS COMPANY, | |
| Defendants. | |

---

[1] The Debtors and the last four digits of their federal tax identification numbers are: (1) S.M.F. Group Inc. (1726); (2) 57th Street Hospitality Partners, LLC (2026); (3) Brasserie 57 LLC (6251); (4) Broadway Hospitality Venture, LLC (5541); (5) Brooklyn Diner USA, Inc. (1194); (6) Brooklyn Diner USA, L.P. (9292); (7) Cafe Concepts (Washington DC), LLC (3827); (8) Cieli Partners, L.P. (7771); (9) Ebbets Field Venture, LLC (9637); (10) Ebbets Field Venture II, LLC (2344); (11) Fireman Hospitality Card LLC (4763); (12) Fiorello's Roman Cafe, Inc. (2519); (13) Italian Cafe

12066054.3

Plaintiffs Brasserie 57 LLC, Broadway Hospitality Venture, LLC, Brooklyn Diner USA, L.P., Cafe Concepts (Washington DC), LLC, Cieli Partners, L.P., Ebbets Field Venture, LLC, Fiorello's Roman Cafe, Inc., Italian Cafe Concepts, LLC, Red Eye Grill, L.P., and The Finer Diner, LLC, debtors and debtors in possession in the above-captioned, jointly administered chapter 11 cases (the "**Bankruptcy Cases**") (each a "**Plaintiff**" and collectively, "**Plaintiffs**"), by and through their proposed undersigned counsel, for their Complaint against defendants American Express Travel Related Services Company, Inc. ("**Amex TRS**"), Toast, Inc. ("**Toast**"), and Stripe, Inc. and Stripe Payments Company (together, "**Stripe**," and collectively with Amex TRS and Toast, the "**Defendants**"), allege upon knowledge as to their own acts and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. This is an adversary proceeding brought under 11 U.S.C. §§ 105(a) and 542, Federal Rules of Bankruptcy Procedure 7001(a), (g) and (i), and 28 U.S.C. § 2201 to compel each Defendant to turn over to Plaintiffs, as property of their bankruptcy estates pursuant to 11 U.S.C. § 541(a)(1), all amounts that each Defendant is holding, withholding, or diverting on account of credit and charge card transactions processed for Plaintiffs' restaurants (collectively, and as further defined below, the "**Withheld Amounts**").

2. Amex TRS, Toast, and Stripe each serve as a payment processor (and, in the case of Toast, also as a point-of-sale platform provider) for credit and charge card transactions made by patrons to restaurants operated by Plaintiffs. In the ordinary course, each Defendant is obligated to remit to each Plaintiff certain amounts from card transactions processed through that merchant's

---

Concepts, LLC (3784); (14) Red Eye/Brooklyn Associates, L.P. (9293); (15) Red Eye Grill, Inc. (1189); (16) Red Eye Grill, L.P. (9291); (17) SFAP Group, LLC (9152); (18) Shelny, LLC (1859); (19) SMJ Group, Inc. (1191); (20) SMJ Group, L.L.C. (3319); (21) The Finer Diner, LLC (1940); and (22) The Fireman Group Cafe Concepts, Inc. (5919). The Debtors' mailing address is 810 Seventh Avenue, Suite 615, New York, NY 10019.

12066054.3

account with that Defendant, net of that Defendant's processing fees and any properly reserved chargebacks.

3. Notwithstanding such obligations, each Defendant has withheld and continues to withhold from one or more Plaintiffs amounts that are property of and are owed to those Plaintiffs, purportedly based on one or more payment redirect notices (collectively, the "**Redirect Notices**") sent to that Defendant by one or more merchant cash advance lenders, purportedly asserting rights to those amounts and demanding that such amounts be paid to those lenders rather than to Plaintiffs.

4. The consequences of such withholding are immediate and existential. Defendants' freeze has cut off essentially all of Plaintiffs' revenue for more than a week, leaving Plaintiffs with less than $100,000 in available cash remaining.

5. The immediate release of the Withheld Amounts, and the resumption of timely ordinary-course settlement and remittance going forward, is essential to Plaintiffs' ability to continue meeting payroll obligations and preserving jobs for their more than 800 valued employees, which is not only an important public-interest goal of Plaintiffs, but also critical to a successful reorganization herein.

6. The commencement of the Bankruptcy Cases triggered the automatic stay under 11 U.S.C. § 362(a) and vested in each Plaintiff's estate all of that Plaintiff's legal and equitable interests in the Withheld Amounts under 11 U.S.C. § 541(a)(1). Whatever rights any merchant cash advance lender or other third party may assert in the Withheld Amounts must be resolved through the bankruptcy process, not through self-help withholding or diversion by Defendants.

7. Plaintiffs bring this action to: (i) obtain turnover of the Withheld Amounts from each Defendant under 11 U.S.C. § 542; (ii) obtain a declaration that the Withheld Amounts are

3

12066054.3

property of Plaintiffs' respective estates and that no Defendant has any right, title, authority, or obligation to withhold or divert the Withheld Amounts outside the bankruptcy process, and that the Redirect Notices provide no basis to withhold, divert, or redirect amounts arising from postpetition transactions; and (iii) permanently enjoin each Defendant from transferring, disbursing, or otherwise disposing of the Withheld Amounts, and require each Defendant to settle and remit to Plaintiffs, in the ordinary course, amounts arising from postpetition card transactions. Plaintiffs are contemporaneously seeking a temporary restraining order and preliminary injunction by separate motion.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the Standing Order of Reference of the United States District Court for the Southern District of New York.

9.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), including without limitation subsections (A), (E), and (O) thereof, in that it seeks turnover of property of the estate under 11 U.S.C. § 542, declaratory relief concerning property of the estate, and injunctive relief in aid of the administration of the estates.  Plaintiffs consent to entry of final orders or judgment by this Court to the extent that any such consent is necessary to be consistent with Article III of the United States Constitution.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises in and is related to the Bankruptcy Cases pending in this district.

11.     This adversary proceeding is commenced pursuant to Federal Rules of Bankruptcy Procedure 7001(a), (g) and (i), and 11 U.S.C. §§ 105(a), 541(a)(1), and 542.

4

12066054.3

**THE PARTIES**

A. *Plaintiffs*

12. Plaintiff Brasserie 57 LLC is a debtor and debtor in possession in the above-captioned chapter 11 cases, and operates the restaurants known as Paris Bar and Le Jardin at 120 W. 57th Street, New York, New York 10019.

13. Plaintiff Broadway Hospitality Venture, LLC is a debtor and debtor in possession in the above-captioned chapter 11 cases, and operates the restaurant known as Bond 45 at 221 W. 46th Street, New York, New York 10036.

14. Plaintiff Brooklyn Diner USA, L.P. is a debtor and debtor in possession in the above-captioned chapter 11 cases, and operates the restaurant known as Brooklyn Diner at 212 W. 57th Street, New York, New York 10019.

15. Plaintiff Cafe Concepts (Washington DC), LLC is a debtor and debtor in possession in the above-captioned chapter 11 cases, and operates the restaurant known as Cafe Fiorello at 1001 Pennsylvania Ave. NW, Washington, DC 20004.

16. Plaintiff Cieli Partners, L.P. is a debtor and debtor in possession in the above-captioned chapter 11 cases, and operates the restaurant known as Trattoria Dell'Arte at 900 7th Ave., New York, New York 10106.

17. Plaintiff Ebbets Field Venture, LLC is a debtor and debtor in possession in the above-captioned chapter 11 cases, and operates the restaurant known as Brooklyn Deli at 200 W. 57th Street, New York, New York 10019.

18. Plaintiff Fiorello's Roman Cafe, Inc. is a debtor and debtor in possession in the above-captioned chapter 11 cases, and operates the restaurant known as Cafe Fiorello at 1900 Broadway, New York, New York 10023.

12066054.3

19.     Plaintiff Italian Cafe Concepts, LLC is a debtor and debtor in possession in the above-captioned chapter 11 cases, and operates the restaurant known as Cafe Paradiso at 144 W. 65th Street, New York, New York 10023.

20.     Plaintiff Red Eye Grill, L.P. is a debtor and debtor in possession in the above-captioned chapter 11 cases, and formerly operated the restaurant known as Redeye Grill at 890 7th Ave., New York, New York 10019.

21.     Plaintiff The Finer Diner, LLC is a debtor and debtor in possession in the above-captioned chapter 11 cases, and operates the restaurant known as Brooklyn Diner at 155 W 43rd Street, New York, New York 10036.

22.     Each of the Plaintiffs remains in possession of its property and continues to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

B.     *Defendants*

23.     Defendant American Express Travel Related Services Company, Inc. is, upon information and belief, a corporation organized under the laws of the State of New York, with a business address at 200 Vesey Street, New York, New York 10285.  Amex TRS provides card-issuing, payment processing, and merchant settlement services and, in that capacity, holds and processes credit and charge card transactions generated at or through Plaintiffs' restaurants.

24.     Defendant Toast, Inc. is, upon information and belief, a Delaware corporation with offices at 401 Park Drive, Suite 801, Boston, Massachusetts 02215.  Toast provides point-of-sale software, hardware, and payment processing services and, in that capacity, holds and processes credit card transactions generated at or through Plaintiffs' restaurants.

25.     Defendant Stripe, Inc. is, upon information and belief, a Delaware corporation with a principal place of business at 354 Oyster Point Boulevard, South San Francisco, California

12066054.3

94080.  Stripe provides payment processing and related financial services and, in that capacity, holds and processes credit card transactions generated at or through Plaintiffs' restaurants.

26.     Defendant Stripe Payments Company is, upon information and belief, a Delaware corporation with a principal place of business at 354 Oyster Point Boulevard, South San Francisco, California 94080, and is a state-licensed money transmitter that, as part of the Stripe payment processing services, receives, holds, and settles funds owed to merchants, including Plaintiffs. References in this Complaint to Stripe include Stripe, Inc. and Stripe Payments Company, individually and collectively.

## FACTUAL BACKGROUND

A.     *The Chapter 11 Cases*

27.     On August 9, 2026 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee has been appointed in the Bankruptcy Cases.  The Bankruptcy Cases are jointly administered pursuant to Bankruptcy Rule 1015(b) at the above-captioned number.

28.     Plaintiffs operate nine iconic restaurants: eight in New York City, including Cafe Fiorello, Trattoria Dell'Arte, Bond 45, and Brooklyn Diner, located steps from Carnegie Hall and Lincoln Center and in the heart of the Theater District, and one in Washington, D.C., operated by Cafe Concepts (Washington DC), LLC.  Plaintiffs' New York restaurants are among the City's longest-running and most recognizable dining destinations, having served generations of theatergoers, concertgoers, and visitors.  Plaintiffs employ more than 800 individuals at their restaurants and corporate offices.

12066054.3

29.     Each Plaintiff is party to one or more agreements with each Defendant governing payment processing services, including the rates charged and the punctual settlement of net amounts to the applicable Plaintiff's designated account.  In the ordinary course of business, Plaintiffs accept credit and charge cards as payment from patrons, and rely on each Defendant as payment processors to settle and remit amounts from those transactions.

30.     Each Defendant remits settled amounts, net of contractually agreed fees, to Plaintiffs' operating accounts within the settlement periods provided under the applicable agreements, and each Defendant's systems record the transaction date associated with every settled amount.

B.     *The Merchant Cash Advance Agreements*

31.     The Plaintiffs have, from time to time, obtained operating funds from so-called merchant cash advance lenders ("**MCA Lenders**").

32.     Merchant cash advance lenders typically operate by providing funds to an operating business, purportedly as a "purchase" of future revenue rather than as a loan, in exchange for delivery of a "share" of future sales revenue, plus a fee. Notwithstanding the lenders' efforts to camouflage the arrangement and label the loan as a prepurchase of future revenue, such arrangements are in fact disguised loans, routinely at unlawful and usurious interest rates or otherwise subject to unlawful and onerous terms.

33.     The MCA Lenders' claims against Plaintiffs are not valid, and are the subject of pending litigation in state court, seeking, *inter alia*, to void the agreements under New York law based on criminally usurious interest, and to recover damages and other remedies, including remedies under the civil RICO statute.

34.     The Debtors intend to resolve the claims of, and the claims against, the MCA Lenders in the Bankruptcy Cases, and such claims are not at issue and will not be adjudicated

12066054.3

herein.  Rather, as discussed below, this action seeks only limited relief as against the Defendant payment processors.

C.      *Amex TRS Is Withholding Property of the Estate*

35.     Prior to the Petition Date, Amex TRS received one or more Redirect Notices from one or more of the MCA Lenders purporting to direct that amounts otherwise payable to one or more Plaintiffs be paid to such MCA Lenders, and Amex TRS is withholding merchant payments from the affected Plaintiffs based on, and in implementation of, such notices.

36.     Upon information and belief, as of the date of this Complaint, Amex TRS is withholding *not less than* $3,302,178 (with full reservation of rights herein as to any larger total that may be demonstrated) owed to Plaintiffs, as further detailed in Exhibit A.  This total includes amounts representing server tips that are not property of the estate and are held in trust for the benefit of, and are payable to, Plaintiffs' tipped employees.

37.     Upon information and belief, Amex TRS is additionally charging Plaintiffs fees in connection with the withholding of amounts from Plaintiffs.

38.     Plaintiffs have made demand upon Amex TRS for payment and turnover of the Withheld Amounts, but Amex TRS has failed and refused to turn over such amounts.

D.      *Toast Is Withholding Property of the Estate*

39.     Prior to the Petition Date, Toast received one or more Redirect Notices from one or more of the MCA Lenders purporting to direct that amounts otherwise payable to one or more Plaintiffs be paid to such MCA Lenders, and Toast is withholding merchant payments from the affected Plaintiffs based on, and in implementation of, such notices.

40.     Upon information and belief, as of the date of this Complaint, Toast is withholding *not less than* $2,562,910.00 (with full reservation of rights herein as to any larger total that may

9

be demonstrated) owed to Plaintiffs, as further detailed in Exhibit A.  This total includes amounts representing server tips that are not property of the estate and are held in trust for the benefit of, and are payable to, Plaintiffs' tipped employees.

41.     Upon information and belief, Toast performs some or all of its payment processing functions through Worldpay, LLC, or other third parties, which processes sales data, facilitates funds transfers with the card networks, and settles funds either directly to merchants' accounts or through one or more Toast-designated accounts.  Under the applicable agreements, responsibility to Plaintiffs for the receipt and amount of settlement rests with Toast.  Regardless of the entity, intermediary, or account through which such amounts flow, Toast is obligated to remit the amounts due to Plaintiffs, and the amounts withheld remain property of Plaintiffs' estates in the possession, custody, or control of Toast or of others acting on its behalf or holding funds for its account.

42.     Plaintiffs have made demand upon Toast for payment and turnover of the Withheld Amounts, but Toast has failed and refused to turn over such amounts.

E.     *Stripe Is Withholding Property of the Estate*

43.     Prior to the Petition Date, Stripe received one or more Redirect Notices from one or more of the MCA Lenders purporting to direct that amounts otherwise payable to one or more Plaintiffs be paid to such MCA Lenders, and Stripe is withholding merchant payments from the affected Plaintiffs based on, and in implementation of, such notices.

44.     Upon information and belief, as of the date of this Complaint, Stripe is withholding *not less than* $101,885 (with full reservation of rights herein as to any larger total that may be demonstrated) owed to one or more Plaintiffs on account of credit card transactions processed through Stripe, as further detailed in Exhibit A.  This total includes amounts representing server

12066054.3

tips that are not property of the estate and are held in trust for the benefit of, and are payable to, Plaintiffs' tipped employees.

45.    Upon information and belief, within the Stripe payment processing services, Stripe Payments Company is the entity that receives, holds, and settles merchant funds, including in pooled accounts, and Stripe, Inc. provides the associated technology services.  Regardless of the allocation of functions between them, Stripe, Inc. and Stripe Payments Company are responsible, individually and collectively, for the settlement and remittance of the amounts due to Plaintiffs, and the amounts withheld remain property of Plaintiffs' estates in the possession, custody, or control of one or both of them or of others acting on their behalf or holding funds for their account.

46.    Plaintiffs have made demand upon Stripe for payment and turnover of the Withheld Amounts, but Stripe has failed and refused to turn over such amounts or to provide Plaintiffs with an adequate explanation or documentation for the basis of the withholding.

F.    *Common Allegations*

47.    Plaintiffs did not consent, either prepetition or postpetition, to have their card processing amounts withheld or diverted by any Defendant to or for the benefit of any third party, and no order of this Court has authorized any such withholding or diversion.

48.    On the Petition Date, and at all times thereafter, each Defendant had actual knowledge of the commencement of the Bankruptcy Cases and of the imposition of the automatic stay under 11 U.S.C. § 362(a).

49.    Promptly following the commencement of the Bankruptcy Cases, Plaintiffs, through counsel, sent to each Defendant, and each Defendant received, written notice of the commencement of the Bankruptcy Cases and of the automatic stay under 11 U.S.C. § 362(a), together with a demand for the turnover of the Withheld Amounts and for the continued settlement

11

12066054.3

and remittance to Plaintiffs, in the ordinary course, of amounts arising from postpetition card transactions.

50.     Despite demand, each Defendant has failed to turn over the Withheld Amounts, and continues to withhold amounts arising in the ordinary course of Plaintiffs' postpetition restaurant operations.  As used herein, "**Prepetition Withholding**" means all amounts that a Defendant has withheld, reserved, or not remitted to a Plaintiff on account of card transactions on or before the Petition Date; "**Postpetition Withholding**" means all such amounts on account of card transactions after the Petition Date; and "**Withheld Amounts**" means the Prepetition Withholding and the Postpetition Withholding together, in each case as reflected on that Defendant's own settlement and account records and without regard to the legal characterization of such amounts or of any Plaintiff's rights therein or thereto.

51.     The consequences of Defendants' actions are immediate and existential. Substantially all of Plaintiffs' revenues are generated through credit and charge card transactions processed by Defendants, and Defendants' cessation of remittances precipitated the commencement of the Bankruptcy Cases.  Since Defendants' freezes began, Plaintiffs have received essentially no revenue for more than a week.  As of the date of this Complaint, Plaintiffs have, in the aggregate, less than $100,000 in available cash with which to operate.

52.     The immediate release of the Withheld Amounts, and the resumption of timely ordinary-course settlement and remittance going forward, is essential to Plaintiffs' ability to continue meeting payroll obligations and preserving jobs for more than 800 valued employees, which is not only essential to plaintiffs' successful reorganization but also an important public-interest goal of Plaintiffs.

12

12066054.3

53.     Upon information and belief, no Defendant has paid or transferred any of the Withheld Amounts to any MCA Lender or other third party but rather each Defendant is holding such amounts pending a court order or other resolution of the competing demands upon it.  The relief sought in this adversary proceeding provides each Defendant with the judicial direction, and the attendant protection, that resolves that impasse.

54.     The Withheld Amounts are property of Plaintiffs' respective bankruptcy estates under 11 U.S.C. § 541(a)(1), are due and owing to the applicable Plaintiffs, and are of more than inconsequential value to the estates.  The Withheld Amounts are property of the estate in the possession, custody, or control of the applicable Defendant that Plaintiffs may use under 11 U.S.C. § 363 and are therefore subject to turnover under 11 U.S.C. § 542(a).  *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–07 (1983) (holding that property in which a creditor asserts a lien, including property in the creditor's possession, remains property of the estate subject to turnover under section 542(a)).

55.     Amounts arising from card transactions submitted after the Petition Date are property acquired by Plaintiffs' estates after the commencement of the Bankruptcy Cases. Pursuant to 11 U.S.C. § 552(a), such amounts are not subject to any lien resulting from any prepetition security agreement, except as and to the extent provided in 11 U.S.C. § 552(b).  *See In re Cafeteria Operators, L.P.*, 299 B.R. 400, 405 (Bankr. N.D. Tex. 2003) (holding that revenues generated by restaurant debtors' postpetition operations are not subject to a prepetition lender's security interest under section 552).  Whether any party can trace any portion of such amounts to prepetition collateral under 11 U.S.C. § 552(b) is not at issue in this adversary proceeding, and Plaintiffs seek no determination in that regard.

12066054.3

56.     Any obligation that section 9-406 of the Uniform Commercial Code or other applicable nonbankruptcy law might impose upon any Defendant with respect to such postpetition amounts presupposes an enforceable right to payment in the noticing party.  Sections 362, 541, 542, and 552(a) of the Bankruptcy Code suspend or cut off any such right as to such amounts and, to the extent of any conflict, applicable nonbankruptcy law must yield to the operation of the Bankruptcy Code and to compliance with orders of this Court.  U.S. Const. art. VI, cl. 2; *see, e.g., In re Old Carco LLC*, 406 B.R. 180, 205–06 (Bankr. S.D.N.Y. 2009) (holding that state law must yield where it unduly impedes the operation of federal bankruptcy policy).

57.     Whatever rights any MCA Lender or other third party may assert against Plaintiffs on account of prepetition financing are, at most, disputed prepetition claims against the estates or liens on property of the estates that must be asserted through the claims allowance process, through a properly noticed motion for relief from the automatic stay, or through an adversary proceeding to determine the validity, priority, or extent of a lien under Bankruptcy Rule 7001(b).  Such purported liens do not entitle any Defendant unilaterally to withhold property of the estate from Plaintiffs, contrary to 11 U.S.C. § 542, or to redirect it to a third party, in violation of 11 U.S.C. § 362(a).

58.     By this action, Plaintiffs seek only the recovery of the Withheld Amounts into their bankruptcy estates, with adjudication of any and all liens, claims, interests, and other rights of any party with respect to the Withheld Amounts, if and to the extent they validly exist, to be reserved for subsequent determination by this Court.

59.     Upon any such transfer, Plaintiffs will treat the Prepetition Withholding so received as cash collateral within the meaning of 11 U.S.C. § 363(a) to the extent, if any, of liens thereon that are valid, perfected, enforceable, and unavoidable and that attach to such funds, as

14

subsequently determined by this Court, and Plaintiffs will account for such funds in the course of the Bankruptcy Cases and in accordance with any postpetition financing or cash management procedures approved in the Bankruptcy Cases.

## COUNT I

### Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542
### Against Amex TRS

60.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though fully set forth herein.

61.     The Withheld Amounts attributable to Amex TRS, as described above, constitute a debt owed by Amex TRS to the applicable Plaintiffs that is due and owing and that is property of their respective bankruptcy estates.

62.     Amex TRS has possession, custody, or control of its respective Withheld Amounts and has refused, and continues to refuse, to pay or deliver them to Plaintiffs, in violation of 11 U.S.C. § 542.  Such amounts constitute a debt owed to the applicable Plaintiffs within the meaning of 11 U.S.C. § 542(b) or, in addition or in the alternative, property of the estate subject to delivery under 11 U.S.C. § 542(a).

63.     By reason of the foregoing, Plaintiffs are entitled to an order compelling Amex TRS to immediately turn over and pay to each applicable Plaintiff the full amount of that Plaintiff's Withheld Amounts, together with any additional amounts subsequently withheld pending resolution of this adversary proceeding, plus interest.

## COUNT II

### Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542
### Against Toast

64.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though fully set forth herein.

15

12066054.3

65.     The Withheld Amounts attributable to Toast, as described above, constitute a debt owed by Toast to the applicable Plaintiffs that is due and owing and that is property of their respective bankruptcy estates.

66.     Toast has possession, custody, or control of its respective Withheld Amounts and has refused, and continues to refuse, to pay or deliver them to Plaintiffs, in violation of 11 U.S.C. § 542. Such amounts constitute a debt owed to the applicable Plaintiffs within the meaning of 11 U.S.C. § 542(b) or, in addition or in the alternative, property of the estate subject to delivery under 11 U.S.C. § 542(a).

67.     By reason of the foregoing, Plaintiffs are entitled to an order compelling Toast to immediately turn over and pay to each applicable Plaintiff the full amount of that Plaintiff's Withheld Amounts, together with any additional amounts subsequently withheld pending resolution of this adversary proceeding, plus interest.

## COUNT III

### Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542
### Against Stripe

68.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though fully set forth herein.

69.     The Withheld Amounts attributable to Stripe, as described above, constitute a debt owed by Stripe to the applicable Plaintiffs that is due and owing and that is property of their respective bankruptcy estates.

70.     Stripe has possession, custody, or control of its respective Withheld Amounts and has refused, and continues to refuse, to pay or deliver them to Plaintiffs, in violation of 11 U.S.C. § 542. Such amounts constitute a debt owed to the applicable Plaintiffs within the meaning of 11

16

U.S.C. § 542(b) or, in addition or in the alternative, property of the estate subject to delivery under 11 U.S.C. § 542(a).

71.     By reason of the foregoing, Plaintiffs are entitled to an order compelling Stripe to immediately turn over and pay to each applicable Plaintiff the full amount of that Plaintiff's Withheld Amounts, together with any additional amounts subsequently withheld pending resolution of this adversary proceeding, plus interest.

## COUNT IV

**Declaratory Judgment Pursuant to 28 U.S.C. § 2201**
**Against All Defendants**

72.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though fully set forth herein.

73.     An actual and justiciable controversy exists between Plaintiffs and each Defendant concerning entitlement to the Withheld Amounts that each Defendant is withholding, as described herein.

74.     Pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001(i), this Court may declare the rights and legal relations of the parties with respect to the Withheld Amounts, whether or not further relief is or could be sought.

75.     Plaintiffs seek a declaration that the Withheld Amounts, and Plaintiffs' rights with respect thereto, are property of Plaintiffs' respective bankruptcy estates under 11 U.S.C. § 541(a)(1).

76.     Plaintiffs further seek a declaration that no Defendant has any right, authority or obligation to pay, transfer, or apply any Withheld Amounts to or for the benefit of any third party, including any MCA Lender, or on account of any claim of such Defendant or any of its affiliates, absent further order of this Court.

12066054.3

77.     Plaintiffs further seek a declaration that amounts arising from card transactions submitted after the Petition Date must be settled and promptly remitted to the applicable Plaintiffs in the ordinary course.  By operation of 11 U.S.C. §§ 362, 541, 542, and 552(a), the Redirect Notices and any other notice, instruction, or claim of any third party, including any MCA Lender, are without force or effect as to such amounts and do not relieve any Defendant of that obligation, and any contrary obligation arising under section 9-406 of the Uniform Commercial Code or other applicable nonbankruptcy law is suspended or preempted as to such amounts.

78.     Plaintiffs further seek a declaration that payment or delivery of any Withheld Amounts to Plaintiffs in compliance with an order of this Court discharges the paying Defendant's obligations with respect to the amounts so paid, notwithstanding any notice, instruction, or claim of any third party.

79.     The declarations sought herein concern only Defendants' obligations with respect to the Withheld Amounts.  They do not seek, and are without prejudice to, any adjudication of the validity, characterization, scope, priority, enforceability, or effect of any MCA Lender's asserted interests, claims, or notices as between any MCA Lender and any Plaintiff, of the effectiveness of any Redirect Notice as to amounts attributable to transactions submitted on or before the Petition Date, or of any question of tracing under 11 U.S.C. § 552(b), all of which are expressly reserved.

## COUNT V

**Injunctive Relief Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rule 7065
Against All Defendants**

80.     Plaintiffs repeat and reallege each of the allegations set forth in the foregoing paragraphs as though fully set forth herein.

81.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,"

12066054.3

including orders in aid of sections 362, 541, and 542 of the Bankruptcy Code and injunctive relief necessary to protect property of the estate and the administration of the Bankruptcy Cases. *See In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003) (recognizing that section 105(a) authorizes equitable orders that carry out, and are tied to, other provisions of the Bankruptcy Code).

82.    Unless enjoined, each Defendant will continue to withhold its respective Withheld Amounts from Plaintiffs and may pay or transfer the Withheld Amounts to one or more of the MCA Lenders or otherwise dissipate them.  As alleged above, the immediate release of the Withheld Amounts, and the resumption of timely ordinary-course settlement and remittance going forward, is essential to Plaintiffs' ability to continue meeting payroll obligations, to preserve jobs for more than 800 valued employees, and to reorganize successfully.  These harms are immediate and irreparable, and no award of money damages after the fact could remedy them.

83.    Plaintiffs have succeeded, or are substantially likely to succeed, on the merits of their claims for turnover and declaratory relief set forth above, because the Withheld Amounts, and Plaintiffs' rights with respect thereto, are property of Plaintiffs' estates that each Defendant is obligated to turn over under 11 U.S.C. § 542, and because competing claims of third parties to property of the estate may not be resolved by self-help outside the bankruptcy process.

84.    In addition, each Defendant has received prompt written notice of the Bankruptcy Cases and of the automatic stay.  The postpetition withholding, diversion, or application by any Defendant of amounts arising from card transactions submitted after the Petition Date constitutes an act to exercise control over property of Plaintiffs' estates in violation of 11 U.S.C. § 362(a)(3), and any such withholding on account of prepetition claims constitutes an act to collect or recover such claims in violation of 11 U.S.C. § 362(a)(6).

19

85.     The requested injunction imposes no harm on any Defendant.  All liens, claims, interests, and other rights of any party with respect to the Withheld Amounts, if and to the extent valid, attach to the funds unimpaired; compliance discharges each Defendant to the extent of amounts paid; and each Defendant will continue to earn its ordinary-course fees from continued processing.  Continued withholding, by contrast, threatens the immediate closure of Plaintiffs' restaurants and the failure of the Bankruptcy Cases at their outset.

86.     The public interest favors preserving property of the estate for orderly administration under the Bankruptcy Code and preventing the circumvention of the automatic stay and the centralized claims resolution process that the Bankruptcy Code is designed to provide. The public interest is further served by the requested relief in that such relief is essential for the continued employment and preservation of jobs for Plaintiffs' 800 employees.

87.     By reason of the foregoing, Plaintiffs are entitled to a permanent injunction: (i) restraining each Defendant, and its respective officers, agents, employees, attorneys, any payment processor, acquiring or sponsor bank, or other financial institution acting on its behalf or holding funds for its account (including, in the case of Toast, Worldpay), and all persons acting in concert with it, from transferring, disbursing, applying, encumbering, or otherwise disposing of any Withheld Amounts, including to or for the benefit of any MCA Lender or on account of any claim of such Defendant or any of its affiliates, pending further order of this Court; (ii) requiring each Defendant to settle and remit to the applicable Plaintiffs, in the ordinary course, all amounts arising from card transactions submitted after the Petition Date, notwithstanding any Redirect Notice or any other instruction from any party other than Plaintiffs; and (iii) restraining each Defendant from establishing or increasing any reserve or holdback, and from terminating, suspending, or modifying any agreement with or services to any Plaintiff, on account of any Redirect Notice, the

12066054.3

commencement of the Bankruptcy Cases, or Plaintiffs' financial condition. Plaintiffs are contemporaneously seeking a temporary restraining order and preliminary injunction by separate motion pursuant to Bankruptcy Rule 7065.

## **RESERVATION OF RIGHTS**

88. Plaintiffs reserve the right to amend or supplement this Complaint, including without limitation to update or correct the Withheld Amounts and related information identified in Exhibit A as further information becomes available through discovery or otherwise, to join additional parties (including any payment processor, acquiring or sponsor bank, or depository institution holding or controlling any Withheld Amounts), and to assert additional claims, including without limitation claims to determine the validity, priority, or extent of any MCA Lender's purported liens under Bankruptcy Rule 7001(b), claims and remedies for violations of the automatic stay, including under 11 U.S.C. §§ 362 and 105(a) and for civil contempt, and avoidance claims under chapter 5 of the Bankruptcy Code, as appropriate. Nothing in this Complaint characterizes the Withheld Amounts beyond their status as estate property; admits or concedes the validity, effectiveness, scope, or consequence of any redirect or hold notice, security interest, assignment, purchase, reserve, setoff, recoupment, or ownership claim of any party; concedes the occurrence of any default under, or the enforceability of, any prepetition financing agreement; or waives any claim, defense, or argument of the Debtors or their estates against any Defendant or any MCA Lender, all of which are expressly preserved.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants and order as follows:

12066054.3

A.   On Count I, enter an order compelling Amex TRS immediately to turn over and pay to each applicable Plaintiff the full amount of that Plaintiff's Withheld Amounts (whether arising prepetition or postpetition), plus interest;

B.   On Count II, enter an order compelling Toast immediately to turn over and pay to each applicable Plaintiff the full amount of that Plaintiff's Withheld Amounts (whether arising prepetition or postpetition), plus interest;

C.   On Count III, enter an order compelling Stripe immediately to turn over and pay to each applicable Plaintiff the full amount of that Plaintiff's Withheld Amounts (whether arising prepetition or postpetition), plus interest;

D.   Provide, in connection with the relief described in paragraphs A through C above, that any and all liens, claims, interests, and other rights of any party with respect to amounts turned over, if and to the extent valid, shall attach to the funds so paid with the same validity, priority, extent, and effect, if any, as existed immediately before payment, with all such matters reserved for subsequent determination by this Court, and that each Defendant shall be released from further liability to any party with respect to amounts so turned over in compliance with such order;

E.   On Count IV, issue the declarations set forth in Count IV above;

F.   On Count V, issue a permanent injunction as set forth in Count V above;

G.   Awarding Plaintiffs their costs and, to the extent permitted by applicable law or contract, reasonable attorneys' fees incurred in this adversary proceeding; and

22

12066054.3

H.      Granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: August 10, 2026        **RAINES FELDMAN LITTRELL LLP**
New York, New York

/s/ *Scott Michael Hare*
Hamid R. Rafatjoo, Esq.
Carollynn H.G. Callari, Esq.
David S. Forsh, Esq.
Scott M. Hare, Esq. (admitted *pro hac vice*)
1350 Avenue of the Americas, Fl. 22
New York, NY 10019
Tel: (917) 790-7100
Email: hrafatjoo@raineslaw.com
        ccallari@raineslaw.com
        dforsh@raineslaw.com
        share@raineslaw.com

*Proposed Counsel to the Debtors and Debtors
in Possession*

12066054.3